IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| RANDALL WARD, | ) |
| Petitioner, | ) |
| v. | ) No. 1:22-cv-01170-STA-jay |
| MARTIN FRINK, | ) |
| Respondent. | ) |

**ORDER DIRECTING CLERK TO MODIFY DOCKET, DENYING PETITION UNDER 28 U.S.C. § 2254, DENYING A CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

On June 17, 2024, Petitioner Randall Ward, Tennessee Department of Correction ("TDOC") prisoner number 559102, an inmate now incarcerated at the Trousdale Turner Correctional Center ("TTCC") in Hartsville, Tennessee, filed the Operative Petition (*see* ECF No. 21) in this case.[1] On June 20, 2024, the Court dismissed Ground One[2] of the Operative Petition and directed the Warden to file a limited response. (ECF No. 22.) On July 2, 2024, Respondent filed the state court record (*see* ECF No. 24), and on July 30, 2024, Respondent filed a Limited Answer to Third Amended Petition for Writ of Habeas Corpus (the "Response," ECF No. 27). On

---

[1] Ward's initial *pro se* petition under 28 U.S.C. § 2254 was filed on August 8, 2022. (ECF No. 1.) The Court dismissed the claims and granted Ward leave to amend his petition. (ECF No. 7.) The first amended petition was filed on October 12, 2022. (ECF No. 8.) The claims were dismissed, and Ward was allowed to file a second amended petition. (ECF No. 11.) A second amended petition was filed on November 14, 2023. (ECF No. 17.) That petition was dismissed on April 30, 2024, and Ward was again granted leave to amend (ECF No. 18), leading to the filing of Ward's third amended petition (ECF No. 21) which is the Operative Petition in this case.

[2] In Ground One, Ward alleged that the warrant for search and seizure was invalid, unlawful, and defective. (ECF No. 21 at PageID 152.)

September 9, 2024, Ward filed a document entitled Answer to Appellee Brief of 3rd Amended Habeas Corpus Petition (the "Reply," ECF No. 30).

The Clerk is DIRECTED to modify the docket to add TTCC Warden Guy Bousch as the Respondent and terminate all references to Martin Frink and Vince Vantell.  *See* Tennessee Department of Correction, Trousdale Turner Correctional Center, https://www.tn.gov/correction/state-prisons/state-prison-list/trousdale-turner-correctional-center.html (last accessed May 8, 2025).

BACKGROUND

    A.    State Court Procedural History

On June 20, 2016, the Jackson-Madison County Metro Narcotics Unit ("Narcotics Unit") served a search warrant at 181 East Chester Street, Apartment 704, in Jackson, Tennessee.[3]  (ECF No. 24-1 at PageID 178.)  Ward was inside. (*Id.*)  The Narcotics Unit recovered 0.5 grams of crack cocaine, a digital scale, and packaging material for the sale and delivery of narcotics.  (*Id.*)  An affidavit of complaint was filed, and a warrant was issued for Ward's arrest for Possession Schedule II with Intent for Resale and for Possession of Drug Paraphernalia.  (*Id.* at PageID 178-81.)

On June 5, 2017, a grand jury in Madison County, Tennessee returned an indictment charging Ward with one count of possession of cocaine with the intent to sell, one count of possession of cocaine with intent to deliver, and one count of possession of drug paraphernalia.  (*Id.* at PageID 182-85.)  Stephanie Martinez and James Edward Simmons were named as codefendants. (*Id.*)

---

[3] The apartment belonged to James Simmons.  (*See* ECF No. 24-2 at PageID 259.)

A jury trial began in the Circuit Court of Madison County on May 15, 2018. (*See* ECF No. 24-2 at PageID 248.) Assistant Public Defender Kortney D. Simmons represented Ward at trial. (*See id.* at PageID 249.) On May 15, 2018, the jury returned a guilty verdict on all counts. (*Id.* at PageID 428-32.) On June 27, 2018, the trial court merged the two possession of cocaine convictions and sentenced Ward as a Range 2 multiple offender to serve a 10-year sentence in TDOC and to a consecutive sentence of 11 months and 29 days in the county jail on the drug paraphernalia conviction. (*See* ECF No. 24-3 at PageID 462-65, 481-82, 485-86; *see* ECF No. 24-1 at PageID 229-31.)

Ward filed a notice of appeal. (*Id.* at PageID 239.) He argued that: (1) the evidence was insufficient to support his convictions; (2) the trial court erred in admitting Ward's statement to the police; (3) the trial court erred in its instructions to the jury about confessions; and (4) the trial court erred in sentencing Ward. (ECF No. 24-7 at PageID 562.) On October 25, 2019, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court. (ECF No. 24-9.) *State v. Ward*, No. W2018-01957-CCA-R3-CD, 2019 WL 5543002 (Tenn. Crim. App. Oct. 25, 2019).

On September 29, 2020, Ward filed a *pro se* Petition for Post-Conviction Relief. (ECF No. 24-11 at PageID 618-23.) On February 8, 2021, Ward, through appointed counsel Joseph T. Howell, filed Petitioner's First Amendment to His Petition for Post-Conviction Relief. (*Id.* at PageID 632-33.) On September 17, 2021, Howell filed Petitioner's Second Amendment to His Petition For Post-Conviction Relief. (*Id.* at PageID 649-52.) A post-conviction hearing was held on September 20, 2021. (*See* ECF Nos. 24-12.) The post-conviction court entered an order denying post-conviction relief on October 13, 2021, finding that Ward failed to prove his allegations by clear and convincing evidence and that Ward's counsel provided effective

assistance. (ECF No. 24-11 at PageID 653-54; *see id.* at PageID 656-58.) Ward appealed. (*Id.* at PageID 659.)

On post-conviction appeal, Ward asserted that his trial counsel was ineffective for failing to: (1) seek suppression of certain evidence; (2) offer the prior testimony of Martinez as an unavailable witness[4]; and (3) seek suppression of Ward's statement to law enforcement. (ECF No. 24-16 at PageID 806.) The TCCA affirmed the denial of post-conviction relief. *Ward v. State*, No. W2021-01224-CCA-R3-PC, 2022 WL 2721343, at *1, 4 (Tenn. Crim. App. July 14, 2022).

B.   Evidence at Trial

The TCCA summarized the evidence presented at trial:

Investigator Dennis Infantis testified that he was an investigator with the Madison County Narcotics Unit and that, on June 20, 2016, he served a search warrant on an apartment on East Chester Street in Jackson, Tennessee. When Investigator Infantis arrived at the apartment with other law enforcement personnel, they knocked on the door to announce their presence, and, after no one answered, obtained a key for the apartment from the management. Using this key, the assembled law enforcement officers opened the apartment's door and placed the occupants in handcuffs for officer safety. The occupants were the Defendant, whom officers found in the bathroom, Stephanie Martinez, and Tiffany McBride. Another individual, James Simmons, to whom the apartment "belonged," arrived soon after and was also detained. An officer read aloud the search warrant to the suspects and then began searching the apartment.

In the living room, Investigator Infantis found a clear crack pipe, as well as rocks of crack cocaine. Crack cocaine was also found in the kitchen in plain view. Ms. Martinez stated that she had crack cocaine hidden on her body. Investigator Infantis also found a digital scale in the bathroom trash can where the Defendant was found. There appeared to be crack cocaine residue on the surface of the scale.

Investigator Infantis spoke to the Defendant while he was in custody; the Defendant signed a waiver of rights form after being advised of his *Miranda* rights. The Defendant told Investigator Infantis that he was unemployed and sold crack cocaine to make money. He also stated that he kept a third of an ounce of cocaine with him at any given time. Investigator Infantis testified that, inside the apartment, he found numerous plastic baggies commonly used to package crack cocaine.

---

[4] Martinez pled guilty to possession of cocaine and of drug paraphernalia. (*See* ECF No. 24-16 at PageID 804.)

4

> On cross-examination, Investigator Infantis agreed that he did not field test the digital scale to determine if the residue on it was cocaine. He also agreed that the baggies were found in the kitchen and were commonly used to package sandwiches. Investigator Infantis agreed that he did not ask the apartment's occupants for what purpose they used the scale. He stated that the Defendant's statement made during his interview was not recorded in any fashion. He stated that the Defendant "opted out" of providing a written statement.
>
> Investigator Infantis clarified that he interviewed the Defendant on June 21, 2016, and that he wrote a report on the Defendant's statement seven days later on June 28. He agreed that the "bulk" of the cocaine found during the search was found on Ms. Martinez's person.
>
> Lela Jackson testified that she worked at the Tennessee Bureau of Investigation's crime lab and was declared an expert in the field of forensic chemistry and identifying controlled substances. Ms. Jackson tested the "rock-like substance" recovered from the apartment; it tested positive for cocaine and weighed .14 grams. She tested a second rock-like substance from the apartment which was positive for cocaine and weighed .18 grams.
>
> On cross-examination, Ms. Jackson agreed that the total weight of the tested substances was .32 grams. She agreed that the substances contained cocaine and were not "pure" cocaine.

*Ward*, 2019 WL 5543002, at *1-2.

        C.       The Post-Conviction Hearing

The TCCA summarized the evidence presented at the post-conviction hearing:

> The petitioner testified that trial counsel should have moved to suppress the evidence obtained pursuant to a search warrant because he did not believe it to be a valid warrant. He said that the warrant relied on a confidential informant to establish probable cause but that "I don't even know who that is. I never faced my accuser. I never heard who it was." He asserted that had counsel challenged the validity of the search warrant, the evidence would have been suppressed.
>
> The petitioner said that trial counsel failed to adequately communicate with him. He said that counsel failed to properly cross-examine the State's witnesses; specifically, he wanted counsel to cross-examine the confidential informant "that was supposed to have been in the house with me." The petitioner also said that trial counsel should have sought to have the petitioner's co-defendant, Stephanie Martinez, declared an unavailable witness and should have offered Ms. Martinez's prior testimony into evidence. He explained that Ms. Martinez pleaded guilty to possession of the "cocaine and the paraphernalia," which information "could have exonerated me."

The petitioner testified that trial counsel did not move to suppress his statement to law enforcement, asserting that the statement should have been suppressed because it "was never recorded or never adopted and I really never said that. I don't know where that statement came from."

During cross-examination, the petitioner said that he believed if trial counsel had called his co-defendant, James Simmons to testify, Mr. Simmons would have said that the petitioner did not live at the residence and just happened to be present at the time of the search. The petitioner acknowledged that the police officers gave him *Miranda* warnings but denied that he "g[a]ve the statement that [the officer] said I gave." The petitioner acknowledged that trial counsel had provided him with all discovery materials.

Trial counsel testified that she reviewed the search warrant with the petitioner and that she explained to him that "[i]t appeared to be a valid search warrant." She said, "I did not find a basis for me to be able to file a motion to suppress," explaining that the confidential informant had "purchased the illegal substance from [the petitioner] and Mr. Simmons" during a controlled buy. She also said that because the petitioner "was just a visitor" to the residence, he lacked standing to challenge the search.

Trial counsel said that she and the petitioner discussed calling Ms. Martinez as a witness but that, "[B]ased on what she said in her plea agreement, there was no way in ... hell I would have called her as a witness. There is no way." She explained that Ms. Martinez "was talking about how she was prostituting and he was forcing her to hold these drugs for him and they were his and she was scared of him. I mean, it was all bad." Counsel added that Ms. Martinez's attorney did not permit her to interview Ms. Martinez, precluding her ability to further evaluate what Ms. Martinez's testimony would be. She also said that Ms. Martinez "was on the go" and would "probably ... have been unavailable" to be a witness.

Trial counsel said that "law enforcement claimed that after they Mirandized [the petitioner] that he told them that he was unemployed and that he didn't have ... a steady source of income except for the fact that he sold drugs" and that "[h]e kept a certain amount of drugs on him on a regular basis." She said that she believed that the claim by law enforcement "was completely ridiculous[,] and I fought against it, but I was roped."

During cross-examination, trial counsel acknowledged that this was not a particularly complicated case and said, "I honestly thought that [the petitioner] had a good shot of getting off of this case simply because of where the evidence was found and ... just the facts concerning things." She said that she attempted to negotiate a plea agreement but that the petitioner "was not willing to take anything short of a misdemeanor" with a sentence of "time served."

6

> Trial counsel said that she moved to suppress the petitioner's alleged statement because "I thought it was real shady how the statement went down. There was no recording of it. There was no written statement." She "also brought up the issue that [the officer] took the statement on one day and then he didn't memorialize it in writing until almost a week later." Based on the circumstances, counsel "thought the statement was invalid. I mean, I felt like it was a made-up statement, but unfortunately I was ruled against [o]n that."
>
> Trial counsel said that during her plea submission hearing, Ms. Martinez said that the drugs found on her person belonged to the defendant "and that she was forced to hold them." Counsel said that Ms. Martinez's statement "was just all bad and it would not have been in [the petitioner's] favor for her to testify" or to offer her statement from her plea submission hearing as prior testimony. Counsel said that she explained all these matters to the petitioner.
>
> The transcript of Ms. Martinez's plea submission hearing was exhibited to the hearing, which transcript indicates that as part of her plea agreement, Ms. Martinez agreed to testify against the petitioner. In her testimony at the hearing, Ms. Martinez said that she, Mr. Simmons, and another woman were using drugs at Mr. Simmons' apartment. She said that the petitioner was also present and that the cocaine belonged to the petitioner, explaining that the petitioner sold cocaine out of Mr. Simmons' apartment. Ms. Martinez said that when the police knocked on the door to serve the warrant, the petitioner instructed her to hide the cocaine in her crotch area. She also testified that she was not with the petitioner of her own free will and that for six months or more, the petitioner "would always have someone else. He would go in stores with me. I couldn't be by myself. I was always with him so I felt like I could not get away."

*Ward*, 2022 WL 2721343, at *1-2.

WARD'S HABEAS CLAIMS

Ward's remaining claims in the Operative Petition are:

**Ground Two:** Ineffective of Assistance of Counsel for counsel's failure to seek suppression of evidence found at a residence that Ward was visiting. (ECF No. 21 at PageID 153.)

**Ground Three**: Ineffective Assistance of Counsel because counsel did not file a motion to suppress the search and arrest warrants. (ECF No. 21 at PageID 155.)[5]

---

[5] In the Reply, Ward alleges that the Investigator's and Martinez's testimony was not dependable; that his counsel should have called James Simmons as a witness, that the affidavit of complaint was deficient, that his arrest warrant was invalid; and that the prosecutor committed a *Brady* violation because Ward was not told the identity of the confidential informant. (ECF No. 30 at PageID 837, 839.) Ward alleges violations of the Tennessee Constitution, which "equal up to one

ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners to exhaust their claims in state court before turning to a federal court for relief" and deference to the state court's resolution of the claim in the federal habeas proceedings. *Stermer v. Warren*, 959 F.3d 705, 720-21 (6th Cir. 2020); *see* 28 U.S.C. §§ 2254(b)(1)(A), (c), and (d)(1)-(2). "Ordinarily, a state prisoner satisfies this exhaustion requirement by raising his federal claim before the state courts in accordance with state procedures." *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022). The prisoner must present to the state courts "the same claim under the same theory," argue the claim's factual and legal basis at each level of the state court system, and make the state court aware of the "federal nature of the claim." *Davis v. Jenkins*, 115 F.4th 545, 554 (6th Cir. 2024); *see Whitman v. Gray*, 103 F.4th 1235, 1238 (6th Cir. 2024); *see Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013) (prisoner must present the same facts and same legal theory in state court). If a claim has never been presented to the state courts but a state court remedy is no longer available (such as when an applicable statute of limitations bars a claim), the claim is technically exhausted, but procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). To avoid procedural default, a habeas petitioner in Tennessee must present his federal claims to the trial court and, on appeal, to the TCCA. *Covington v. Mills*, 110 F. App'x 663, 665 (6th Cir. 2004). A prisoner may overcome procedural default by showing cause and prejudice or factual innocence. *See Dretke v. Haley*, 541 U.S. 386, 388 (2004); *see Davila v. Davis*, 582 U.S. 521, 527-28 (2017) (describing procedural default as a corollary to the exhaustion requirement).

---

huge 14th Amendment" violation. (*Id.* at PageID 840.) An attempt to amend the habeas petition to add new claims more than two years after the initial petition was filed is untimely. *See* 28 U.S.C. § 2244(d). The Court shall consider these allegations only to the extent that they support Ward's previously asserted claims of ineffective assistance of counsel about counsel's failure to seek suppression of evidence from the search warrant and from Ward's arrest.

Ward alleges that his counsel was ineffective for failing to seek suppression of the evidence from the search because it was not Ward's residence, no illegal activity or contraband was attributed to him, and there was not probable cause for his arrest and prosecution. (ECF No. 21 at PageID 153, 155.) Ward points out that .18 grams of crack cocaine was found on Martinez and that "only leaves .14 grams for the Crack found on the front coffee table" and "ONE PIPE amongst those (3) Three People." (ECF No. 30 at PageID 837, 839.)

Before the TCCA, Ward alleged that he was deprived of the effective assistance of trial counsel because his counsel failed to seek suppression of certain evidence, offer the prior testimony of an unavailable witness, and seek suppression of Ward's statement to law enforcement. *Ward*, 2022 WL 2721343, at *3. The TCCA cited the correct legal precedent in *Strickland v. Washington*, 466 U.S. 668 (1984), and determined that Ward failed to carry his burden of proof that counsel's representation was deficient. *Id.* at *4. The TCCA noted that Ward relied "solely on his own testimony" to establish proof and that the post-conviction court "explicitly accredited trial counsel's testimony over that of the petitioner." *Id.* The TCCA noted that it was "bound by the post-conviction court's weighing of credibility." *Id.*

Further, the TCCA determined that the alleged deficient performance involved issues within Ward's trial counsel's professional discretion. *Id.* The TCCA referred to trial counsel's accredited testimony that she did not believe there were legal grounds to challenge the search warrant, especially because Ward had no property interest in the residence. *Id.* The TCCA determined that Ward did not present "any grounds on which the search warrant could have been successfully challenged." *Id.* The TCCA further noted that trial counsel "did indeed move to suppress the petitioner's statement but that the trial court denied the motion." *Id.*

9

When, as here, a state prisoner's claim has been adjudicated on the merits in state court, a federal court can issue a writ only if the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)-(2). The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential standard[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "[A] run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case" does not "fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id*. at 406.

An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. This application of federal law must be "objectively unreasonable" for the writ to issue. *Id*. at 409. It is not sufficient that the habeas court, in its independent judgment, determines that the state court decision applied clearly established federal law erroneously or incorrectly. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411). Indeed, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

10

existing law beyond any possibility for fair-minded disagreement. *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Under *Strickland*, 466 U.S. at 687, a convicted defendant alleging ineffective assistance of counsel must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." To establish deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id*. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Richter*, 562 U.S. at 104 (internal quotation marks and citation omitted); *see also id*. at 111–12 (internal citations omitted) ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be

substantial, not just conceivable."); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

The deference to be given a state-court decision under *Strickland* is magnified when reviewing a claim of ineffective assistance of trial counsel under 28 U.S.C. § 2254(d). Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). When the two standards apply in tandem, review is "doubly" so. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal citation omitted). The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105 (parallel citations omitted).

Respondent argues that the TCCA's adjudication of Ward's claim was not contrary to or an unreasonable application of federal law and did not involve an unreasonable determination of facts. (ECF No. 27 at PageID 826-27.) Respondent pointed out trial counsel's testimony that the search warrant was issued based on a controlled buy, that Ward did not own the property, and that he had no standing to challenge the search warrant. (*Id*. at PageID 828; *see* ECF No. 24-12 at

12

PageID 699.)[6]  Ward's counsel testified, "I tried to find every angle, but there was none." (*Id.*) Respondent contends that the TCCA's decision reflects a reasonable application of federal law under *Strickland*, that Ward failed to show that he could successfully challenge the search warrant, and that Ward failed to demonstrate prejudice.  (ECF No. 27 at PageID 829.)

Although Ward contends that the illegal activity and the crack cocaine could not be attributed to him (*see* ECF No. 30 at PageID 837, 839), the TCCA determined on direct appeal that the evidence was sufficient to sustain his convictions because: (1) Ward was in a residence where .32 grams of crack cocaine and a crack pipe was present; (2) Ward was in the bathroom with a digital scale; and (3) Ward admitted to selling crack cocaine as a means of making money and to keeping 1/3 of an ounce with him at all times.  *Ward*, 2019 WL 5543002, at *4.  Ward does not challenge the TCCA's determination of sufficiency of the evidence.  But he now argues that his counsel was ineffective for not suppressing this evidence.

Ward presents no legal argument that a suppression motion would have been successful. *See United States v. Thomas*, 38 F. App'x 198, 201 (6th Cir. 2002) (whether trial counsel acted incompetently in not filing a motion to suppress depends upon the merits of the search and seizure question).  To challenge the reasonableness of a search or seizure, the defendant must have a legitimate expectation of privacy in the place or thing to be searched." *Carpenter v. State*, No. W2024-00801-CCA-R3-PC, 2025 WL 501921, at *6 (Tenn. Crim. App. Feb. 14, 2025). Ownership of the property or a possessory interest in the property are considerations to determine where there is an expectation of privacy.  *Id.*  The TCCA has rejected a defendant's assertion of an expectation of privacy in a "trap house" or residence used to sell drugs, like Simmons'

---

[6] Respondent addressed Ward's concerns about not knowing the identity of the confidential informant. (ECF No. 27 at PageID 827-28.)  However, that issue was not raised in Grounds Two and Three of the Operative Petition and will not be considered here.

apartment was in this case.  *Id.*  Similarly, the Sixth has determined that there is no reasonable expectation of privacy in a drug house where the defendant was not the owner or lessee of the house and there was no evidence that defendant lived at the house.  *See United States v. Thornton*, 609 F.3d 373, 379–80 (6th Cir. 2010).  Counsel's strategic decision to not file a motion to suppress the items retrieved in the search amounts to reasonable performance.  *See Strickland*, 466 U.S. at 689-91 (holding that the defendant must overcome the presumption that a challenged action is sound strategy).

The TCCA applied the correct Supreme Court precedent in *Strickland*, credited the testimony of Ward's counsel about her inability to attack the evidence recovered from the search, noted that Ward had no standing to challenge the search warrant, and found no prejudice.  The TCCA's decision was not contrary to or an unreasonable application of *Strickland* or based an unreasonable determination of facts in light of the evidence presented.  Ward has not demonstrated that the TCCA's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  *Richter*, 562 U.S. at 103; *see Lott v. MacLaren*, 569 F. App'x 392, 399 (6th Cir. 2014) (finding that the state court of appeals' determination that counsel's decision not to move to suppress evidence on ethical grounds was a "reasonable argument that counsel satisfied *Strickland*'s deferential standard").  Ward's allegations in Grounds Two and Three about failure to file a motion to suppress the evidence from the search warrant are without merit and **DENIED**.

Ward alleges in Ground Three that counsel was ineffective for failing to file a motion to suppress the arrest warrant.  (ECF No. 21 at PageID 155.)  Ward does not state what evidence related to the arrest warrant he seeks to suppress.  To that extent, his allegations fail to satisfy Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas

14

Rules"). Habeas Rule 2(c) states that a petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *See McFarland v. Scott*, 512 U.S. 849, 860 (1994) ("the habeas petition, unlike a complaint, must allege the factual underpinning of the petitioner's claims"); *see Mayle v. Felix*, 545 U.S. 644, 669 (2005) (same). Ground Three is inadequately pled despite Ward's multiple attempts at pleading his federal habeas claims.[7]

Ward's ineffective assistance of claims are without merit, inadequately pled, and **DENIED**.

CONCLUSION

Because Ward's ineffective assistance claims are without merit and inadequately pled, the Court **DENIES** habeas relief. The § 2254 Petition is **DISMISSED WITH PREJUDICE**. Judgment shall be entered for Respondent.

APPEAL ISSUES

No § 2254 petitioner may appeal without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *see Dennis v. Burgess*, 131 F.4th 537, 539 (6th Cir. 2025). A petitioner must demonstrate "that jurists of reason could

---

[7] The only evidence at issue subsequent to Ward's arrest appears to be Ward's statement to Investigator Infantis. (*See* ECF No. 24-2 at PageID 283-91.) Ward's counsel raised the issue of the admission of that statement on direct appeal. The TCCA denied relief because the defendant did not make a hearsay objection at trial and waived the claim. *See Ward*, 2019 WL 5543002, at *4. At the post-conviction hearing, Ward's counsel testified about her attempts to suppress Ward's statement and her concerns that there was no recording of the statement, that it was not memorialized until nearly a week later, and that there was no written statement. *Ward*, 2022 WL 2721343, at *2. Simmons objected at trial, but the court overruled her objections. (ECF No. 24-2 at PageID 286-89.) *Id.* The TCCA addressed ineffectiveness as it relates to a motion to suppress Ward's statement to police. *See id.* at *1-2, 4. The TCCA determined that "the record establishes that trial counsel did indeed move to suppress the petitioner's statement but that the trial court denied the motion" and denied Ward relief. *Id.* at *4.

disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). If the district court denies relief on a procedural ground without reaching the underlying constitutional claim, a COA should issue when the petitioner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not debate the district court's resolution of Petitioner's claims, the Court **DENIES** a COA.

A party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). If the district court certifies that an appeal would not be taken in good faith or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5). For the same reasons the Court denies a COA, the Court **CERTIFIES** that any appeal would not be taken in good faith. Leave to appeal *in forma pauperis* is **DENIED**.[8]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 29, 2025.

---

[8] If Petitioner files a notice of appeal, he must pay the full $605 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).